IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DIANE J. TAIT

     Appellant

v.

                  CRIMINAL ACTION NO. 2:10cr104

UNITED STATES OF AMERICA

     Appellee.

## OPINION AND ORDER

    Diane J. Tait ("Tait" or "Appellant") appeals her March 12, 2010 petty offense conviction, which occurred after a bench trial before a United States Magistrate Judge for the District of Maryland. That court convicted Tait of removing private property from federal land in violation of Title 50 of the Code of Federal Regulations, Section 27.61, an administrative regulation that prohibits the removal of public or private property from certain federal lands. The principal questions on appeal are: 1) whether the regulation requires the Government to affirmatively prove, beyond a reasonable doubt, the specific type of property the Appellant allegedly removed; and if so, 2) whether the Government introduced sufficient evidence to meet its

1

burden in the present case.  For the reasons set forth below, Tait's conviction is **REVERSED** and **REMANDED** for entry of **JUDGMENT OF ACQUITTAL**.

## I. Facts, Procedural History, and Magistrate Judge's Opinion

### A. Facts

On September 5, 2009, Tait was on the beach in the "off-road zone" of the federally-owned Chincoteague National Wildlife Refuge ("Refuge") when she and her boyfriend came upon a large fishing boat that had run aground on the beach.  The beached vessel was named the *Freda Marie*,[1] Tr. 39, and at the time it was half in the water and half on the sand.  Tr. 26.  When Tait and her boyfriend came upon the *Freda Marie*, there were already a number of people playing either around or on board the vessel.  Tr. 20-21, 25.  While milling around the boat, Tait decided to cut a portion of rope, one end of which was protruding from the sand next to the boat, and the other end of which was "washing around in the surf."  Tr. 61.  Tait testified that she cut and retrieved a portion of the rope that extended into the water and sand with her pocket knife because she thought it would make a "cool decoration for her camper."  Tr. 62.  Tait admitted at trial that the rope did not belong to her, but stated that at the time she believed it was "just beach junk."  Tr. 63.  She also admitted at trial that

---

[1] It appears that the boat may have also been known as the *Frieda Marie*. Tr. 41.

she picked up a "buoy" that was "floating in the water, also not attached to the boat," before she drove away. Tr. 62.

These events were seen by two of the Government's witnesses, Timothy Farrell ("Farrell") and Jennifer Kyle ("Kyle"). According to Farrell, on September 5, 2009, he was enjoying a day on the beach with his wife and children when he observed a "large fishing boat that had run aground." Tr. 20. He saw people playing around the boat and taking pictures. Tr. 21. Farrell also observed a woman pick up a life preserver/life ring lying next to the boat and place it in the back of her pickup truck. Tr. 21, 23. According to his testimony, that same woman was trying to cut the boat's anchor rope, which he guessed was approximately four or five inches around. Id. He never actually saw the woman successfully cut the rope, but when he returned later in the afternoon, the rope was gone. Tr. 24. Farrell also testified that the crew of the boat was nowhere to be seen. Tr. 28.

Kyle testified as to a similar experience that day. During direct examination, the Government asked Kyle if she observed an "abandoned boat" on September 5th, to which she replied "Yes." Tr. 30. Like Farrell, she observed "someone trying to cut the rope, which [she] believe[s] was attached to the anchor." Id. She also testified that the "boat had been there a long time" "[b]ecause [she] had been there a couple weeks before and had seen it." Tr. 35.

3

The Government also called National Park Service Ranger Brian Richardson ("Richardson"), the officer that issued the Violation Notice to Tait. Richardson testified that he was called by dispatch after the fact and did not witness Tait remove anything from the boat. He was tasked with investigating the possible "theft" of private property and to be on the lookout for a silver Toyota pickup truck. Tr. 37-38. When he saw a truck matching that description at the air station pumps in a beachside parking lot, he initiated a conversation with Tait, the driver of the vehicle. Tr. 38. According to his testimony, he asked Tait whether she had taken anything off the beach that day, to which she replied "No."[2] Id. Tait then allowed him to look in the bed of her truck. Id. While doing so, the Ranger discovered an "orange life saving ring with Freda Marie stenciled on it in black letters, and a white, three-inch braided cotton, about a 30-foot anchor line." Tr. 39. According to the Ranger, the *Freda Marie* was a vessel that had run aground on the Tom's Cove Hook beach about a month prior to this incident. Tr. 39-41. The Ranger testified that the vessel did not belong to the National Park Service or the "Fish and Wildlife [Service]," but he did not know the identity of the owner. Tr. 40. Further, Richardson noted that Tait told him she had picked

---

[2] Tait testified that Richardson asked her whether she took any "private property" off the beach, and she said "no." Tr. 61. She said that Richardson then asked her if she took "anything off the beach," to which she replied "yes." Tr. 61.

4

the items in her truck up off the beach, but she never said the items belonged to her. Tr. 41-42.

On cross examination, Richardson stated that there were no signs posted around the boat saying anything to the effect of "stay off," "no trespass[ing]," "private," or "under salvage." Tr. 44-45. Nor did the crew take any steps to secure items from the boat. Tr. 48. However, Richardson did testify that at some point he told Tait that the items in question were private property. Tr. 47.

As a result of Richardson's encounter with Tait, he seized the life ring and rope from her and wrote her a "United States District Court Violation Notice" for "Remov[al] Private Property" in violation of 50 C.F.R. § 27.61. See Fed. R. Crim. P. 58(b)(1) ("The trial of a petty offense may...proceed on a...violation notice.") That regulation states that "[t]he destruction, injury, defacement, disturbance, or the unauthorized removal of any public property including natural objects or private property on or from any national wildlife refuge is prohibited." 50 C.F.R. § 27.61. "Knowing violations" of this regulation may be punished by a fine and/or imprisonment for not more than one year; while all "[o]ther violations" may be punished by a fine and/or imprisonment not more than 180 days. 16 U.S.C. § 668dd(f). Tait was tried for "removing private property," not "knowing" removal. Tr. 3.

## B. Procedural History

On March 12, 2010, Tait was convicted of "unauthorized removal" of private property at the conclusion of a bench trial. Tr. 83. Tait appealed her conviction on the ground that the Government failed to introduce sufficient evidence to meet its burden of proving that the property in question was privately owned. The appeal was initially filed in the District Court for the District of Maryland. However, the Government moved to dismiss the appeal, arguing that because the offense occurred on that portion of the Refuge that was in Virginia, the appeal properly lay in the United States District Court for the Eastern District of Virginia. As a result, on May 14, 2010, the District Court for the District of Maryland, pursuant to a Joint Order of the Chief Judges of the District of Maryland and the Eastern District of Virginia,[3] transferred the appeal to the Eastern District of Virginia. United States v. Tait, Crim. No. WDQ-10-0194, 2010 U.S. Dist. LEXIS 47637 (D. Md. May 14, 2010).

## C. Magistrate Judge's Opinion

While the Magistrate Judge concluded that the Government proved all of the elements of the offense beyond a reasonable doubt, this appeal only focuses on one element, the status of the property in question. On that issue, the Magistrate Judge found beyond a

---

[3] This Joint Order notes that the trial of certain matters occurring in the Refuge may be conducted by a United States Magistrate Judge for the District of Maryland.

reasonable doubt that Tait removed *private property* from the Refuge. In doing so, the Magistrate Judge stated that the rope and the life preserver/ring had not been abandoned. Tr. 82.

The Magistrate Judge determined that the items in question were private property, though he did so through two different lines of reasoning. He first concluded that the vessel was private property by focusing on the obvious valuable nature of the fishing boat and the length of time it had remained on the beach. In the Magistrate Judge's analysis, he stated that "you have to take the nature of the property into account. This is a valuable fishing boat that ran aground on Assateague Island sometime in the month preceding September of last year." Tr. 82. "If this had been a cheap, plastic dory that a kid left on the beach, [the court] thinks we'd have a different situation, you might be able to presume that that [sic] is abandoned and that somebody else could pick it up just like they could pick up refuse." However, given the value of the boat, the Magistrate Judge stated that he had "little difficulty in concluding that this was private property." Tr. 82. Although the Magistrate Judge ultimately found Tait guilty of unauthorized removal of private property, rather than knowing removal of private property, he also stated that his finding that this was private property was bolstered by the fact that the vessel and its equipment were not "intended to be abandoned property," and

7

Tait "knew that this was something that she wasn't entitled to."[4] Tr. 83. This conclusion was supported, in the court's eyes, by the fact that Tait did not protest or tell Richardson that the property was abandoned when he seized it from her after writing the Violation Notice. Tr. 83.

However, in the second line of reasoning, the Magistrate Judge seemed to indicate that the Government had also proved that the vessel and accompanying equipment were private property through a process of elimination. The court stated that "[i]n any event, [the vessel] is not public property, and [the court] looks at the statute as creating two categories of property: Private property and public property, and this clearly, I think, is private property." Tr. 82.

Tait has challenged both lines of reasoning supporting the Magistrate Judge's conclusion. As to the first line of reasoning, she contends that any circumstantial evidence regarding the boat's presumed value or the length of time it was on the beach was not sufficient for the court to conclude beyond a reasonable doubt that the boat was private property. Appellant's Br. 8. Moreover, she implies in her argument that the second line of reasoning was also flawed because the mere elimination of the public property option does

---

[4] Since it is less than clear that such fact bolsters a finding that the items were private property, it may be that this statement was intended to support the Magistrate Judge's alternative finding that the items were not abandoned property.

not automatically prove that the property in question was private property. According to Tait's brief, while the regulation addresses public and private property, there are more than two potential classifications of property; the boat could also be abandoned. Therefore, according to Tait, the Government must produce some specific evidence that the boat was privately owned at the time she removed the items, rather than trying to meet its burden merely by proving the property did not belong to her or the public. See id.

## II. Standard of Review

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005). See also Fed. R. Crim. P. 58(g)(2)(D). Under those standards, "[a] defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)). "In assessing the sufficiency of the evidence presented in a bench trial, [the appellate court] must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." Elliott v. United States, 332 F.3d 753, 760-61 (4th Cir. 2003). "'Substantial evidence' means 'evidence

that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" United States v. Armel, 585 F.3d 182, 184 (4th Cir. 2009) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). In other words, "in assessing a challenge to the sufficiency of the evidence, [the appellate court] view[s] the evidence in the light most favorable to the government in order to decide whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Garcia-Ochoa, 607 F.3d 371, 376 (4th Cir. 2010) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))(emphasis in original).

In evaluating the facts presented at trial, an appellate court considers "both circumstantial and direct evidence, and allow[s] the government all reasonable inferences that could be drawn in its favor." United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). "[I]t is the role of the factfinder, not the appellate court, to resolve conflicts in testimony, weigh the evidence, and judge the credibility of witnesses." United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

Unlike the more deferential review of factual determinations, when a district court is reviewing a magistrate judge's interpretation of a law, the review is de novo. United States v. Myers, 280 F.3d 407, 416 (4th Cir. 2002) ("A court of appeals reviews questions of statutory

interpretation de novo."). Although this case deals with the Magistrate Judge's interpretation of an administrative regulation, rather than a statute, the same principles of review apply. See United States v. Lofton, 233 F.3d 313, 317 n.4 (4th Cir. 2000) ("The interpretation of the regulations is a legal question reviewed de novo."). With these standards in mind, the Court must review the Magistrate Judge's determination of the law and the facts.

### III. Discussion

Tait was convicted in a bench trial of unauthorized removal of private property in violation of Title 50 of the Code of Federal Regulations, Section 27.61. That section provides that, "[t]he destruction, injury, defacement, disturbance, or the unauthorized removal of any public property including natural objects or private property on or from any national wildlife refuge is prohibited." 50 C.F.R. § 27.61. On appeal, Tait's principal contention is that "[t]he conviction in this case should be vacated and the charges should be dismissed, because the government failed to prove an element of the offense at trial." Appellant's Br. 8.

According to Tait, private ownership of the rope and life ring is an element of the offense. She contends that the Government failed to offer any evidence that the items were private property. In the alternative, she argues that any evidence the Government offered to prove the removed items were private property was insufficient "to

11

prove beyond a reasonable doubt that they were privately owned given the overwhelming weight of evidence showing they were abandoned."[5] Appellant's Br. 8.

The Government counters that it must merely prove whether the property was publicly *or* privately owned, but not identify the actual owner of the boat. Appellee's Br. 7. According to the Government, the "terms 'private' and 'public' property as used in the regulation refer to all property that does not belong to the individual visitor."

---

[5] There was also some discussion at trial as to whether the Government had proved that Tait acted with criminal intent when she removed the rope and life ring. Tr. 51-52. Though Tait did not raise this issue on appeal, the plain language of the regulation (which has no "knowledge" requirement) and the legislative history of the regulation show that Congress intended to criminalize such behavior, even when the perpetrator unintentionally committed the act. See 105 CIS Legis. Hist. P.L. 312 (1998) (stating that Public Law 105-312 "[a]mends the National Wildlife Refuge System Administration Act of 1966 to reduce the penalty for unintentionally committing violations of the act.").

The Tenth Circuit Court of Appeals recently commented on such strict liability crimes, recognizing that in Staples v. United States, 511 U.S. 600, 607-10 (1994) the United States Supreme Court held that "strict liability crimes 'generally are disfavored,' and suggested some indicia of congressional intent, 'express or implied' is necessary before courts can dispense with the traditional mens rea requirement." United States v. Apollo Energies, Inc., 611 F.3d 679, 685-88 (10th Cir. 2010). Though the Staples court reaffirmed "the basic proposition that 'public welfare' or 'regulatory' offenses can 'impose a form of strict criminal liability,'" the Tenth Circuit recognized "important limiting principles to strict liability crimes" grounded in constitutional due process concerns. Id. at 686-87 (citing Staples, 511 U.S. at 606). These limiting principles counsel that in order for strict criminal liability to be permissible, "due process requires citizens be given fair notice of what conduct is criminal" and the law must not "criminalize acts which the defendant does not cause." Id. at 687.

12

Appellee Br. 8. As a result, the Government asserts that it proved the property was private in this case because it "need only establish that the items in question do not belong either to the refuge or the defendant in order to meet its burden of proof under the regulation."[6] Appellee's Br. 8-9. Effectively, the Government contends that it proved the property was private by implication.

In order to determine whether the Government has met its burden of proof with sufficient evidence, the Court must address two issues. First, it will consider whether the regulation only contemplates two classes of property - public and private. If that is the case, the Government could conceivably argue that it need only prove that the property is not public, and thus the property would have to be private by default. However, second, if the Court concludes that the regulation allows for the possibility that more than two classes of property exist, the Court will then examine whether the Government has introduced evidence sufficient for any rational factfinder to conclude that the vessel and its equipment were in fact private property.

---

[6] The Court notes that the Government also puts forward a different interpretation of the regulation in its brief. According to the brief, the federal regulation prohibits "the removal of all property contained...[in the wildlife refuge]...except as specifically authorized by the refuge. In the case of Chincoteague, visitors are not authorized to remove anything from the refuge other than seashells and the personal property that they themselves brought with them to the refuge." Appellant's Br. 8. While this may indeed be the practice on Chincoteague, there is no evidence on the record to support such a specific interpretation of the regulation.

## A. Interpretation of the Regulation

### 1. The Regulation's Classification of Property

In the Magistrate Judge's ruling, he stated on several occasions that he concluded that Tait removed private property from the Refuge. For example, the court found "beyond a reasonable doubt that she removed private property," Tr. 81, and it had "little difficulty in concluding that this was private property." Tr. 82. However, the Magistrate Judge also noted that "[the court looks] at the statute as creating two categories of property: Private property and public property...," Tr. 82, and there is not "a third category of abandoned property." Tr. 55. If this were true, the Government would be relieved of the obligation to exclude abandonment as a reasonable hypothesis of innocence in proving unauthorized removal of <u>private</u> property.

When ruling on Tait's Rule 29 motion at the conclusion of the Government's case, and when making its finding of guilt, the court said that the statute creates only two categories of property. Tr. 54, 82. This may have led the Government to later assert that, as long as it can prove that the property was not public, by default, the property must be private. <u>See</u> Appellee's Br. 8-9. However, such an interpretation fails to take account of all reasonable possibilities.[7] While the regulation at issue prohibits the removal of both public and

---

[7] The Court reviews the District Court's interpretation of an administrative regulation de novo. <u>See</u> <u>Lofton</u>, 233 F.3d at 317.

private property, this Court interprets the regulation as not foreclosing the possibility that a third category of property (abandoned property) may be removed, and on these facts, abandonment was the basis for a reasonable hypothesis of innocence that needed to be addressed and excluded for a conviction to take place.

As noted above, the regulation at issue provides that "...the unauthorized removal of any public property including natural objects or private property on or from any national wildlife refuge is prohibited." 50 C.F.R. § 27.61. The plain language of the regulation requires that the Government prove that the property in question was either public property or private property at the time it was removed. This language does not indicate that the categories of public or private property encompass the entire universe of potential classifications of property. If such an interpretation was given, the statute would effectively prohibit an individual from removing "all property" from the Refuge. Such a broad reading would tend to render the words "public" and "private" superfluous, "thereby violating a basic canon of statutory construction that all words in a statute are to be given effect." Matala v. Consolidation Coal Co., 647 F.2d 427, 429 (4th Cir. 1981).

This conclusion is also bolstered by the canon of interpretation referred to as *expressio unius est exclusio alterius*. That maxim counsels that "the expression of one thing implies the exclusion of

another." <u>Ayes v. United States Dep't of Veteran's Affairs</u>, 473 F.3d 104, 111 (4th Cir. 2006). Here, the regulation specifically prohibited the removal of only public or private property. However, other categories of property, such as abandoned property, are clearly recognized in the lexicon of federal law. For example, 50 C.F.R. § 27.93, a regulation in the same Title and Part of the Federal Regulations as the regulation at issue in the present case, states that "[a]bandoning, discarding, or otherwise leaving any personal property in any national wildlife refuge is prohibited." <u>See also</u> <u>United States v. Stevenson</u>, 396 F.3d 538, 546 (4th Cir. 2005) (noting that in the criminal context, abandoned property is property in which a previous owner no longer has a privacy interest). The fact that § 27.61 could have listed abandoned property as a class of property not to be removed from the Refuge, but failed to do so, implies either that this regulation does not criminalize the removal of abandoned property or that perhaps abandoned property on such federal land becomes public property. Apparently addressing the first of these alternative arguments, the Magistrate Judge recognized this possibility when he discussed whether the property should be classified as private property or property that had been abandoned. <u>See</u> Tr. 82.

As a result, this Court concludes that the regulation only prohibits the removal of public property or private property. Consequently, in order to successfully prosecute a Defendant for a

violation of § 27.61, the Government must prove beyond a reasonable

doubt that the property in question fits into one of those categories

above.   See United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005)

(noting that the Government must prove the essential elements of a crime

beyond a reasonable doubt).   Further, where the facts before a court

allow for a reasonable possibility that property is abandoned, the

Government must exclude such a reasonable hypothesis of innocence in

seeking to prove a criminal violation for unauthorized removal of

private property under this regulation.   Because Tait was charged with

removal of private property, and because the facts of this case allowed

for the reasonable possibility that the items were abandoned, the

Government could not merely prove, as the Government contends, that

the property is not public, is not owned by Tait, and is therefore

private property by default.[8]

## 2. Private Property is an Element of this Offense as Applied to Tait

Although it is not altogether clear that the Government is making

such argument, Tait suggests that the Government may be arguing, as

_____

[8] The Court need not address the issue of whether abandonment of private property on public land vests title in the government so as to convert such private property into public property, since Tait was not tried for removal of public property.   See, e.g., United States v. Shivers, 96 F.3d 120, 124 (5th Cir. 1996) (holding that 1) when the property at issue is embedded in the soil of federal lands, it belongs to the federal government, not the finder, even if the property has been abandoned by the true owner and 2) when the owner of the land where the property is found (whether on or embedded in the soil) has constructive possession of the property such that the property is not lost, it belongs to the owner of the land).

an alternative to its "private property by default" interpretation of the regulation, that in order to convict Tait of the unauthorized removal of <u>private</u> property, it must merely prove "that the property in question was either publicly or privately owned, but was not required to identify the boat's actual owner, as defendant contends." Appellee's Br. 7. While this Court need not address whether the Government is required to prove the identity of the boat's actual owner, to the extent the Government makes such argument, it would be incorrect in asserting that in order to convict of removing private property it merely needs to prove *either* public *or* private ownership of the goods removed. Such an interpretation of the regulation, as applied to Tait, would run afoul of protections afforded her by the United States Constitution.

The Fifth Amendment to the United States Constitution states that "[n]o person shall be...deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In <u>Hartman</u>, the Fourth Circuit held that "[e]lementary principles of due process require that an accused be informed of the specific charge against him." <u>Hartman v. Lee</u>, 283 F.3d 190, 194 (4th Cir. 2002) (citing <u>Cole v. Arkansas</u>, 333 U.S. 1996, 201 (1948)) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense...are basic in our system of jurisprudence...."). "This requirement is also imposed by the Sixth Amendment, which provides, in relevant part, that 'in all criminal prosecutions, the accused shall

enjoy the right . . . to be informed of the nature and cause of the accusation.'" Id. (citing U.S. CONST. amend VI). "Reasonable notice 'sufficiently apprises the defendant of what he must be prepared to meet.'" Stroud v. Polk, 466 F.3d 291, 296 (4th Cir. 2006) (quoting Russell v. United States, 369 U.S. 749, 763 (1962)). "It has long been 'fundamental in the law of criminal procedure...that the accused must be apprised...with reasonable certainty...of the nature of the accusation against him, to the end that he may prepare his defence.'" Id. (citing United States v. Simmons, 96 U.S. 360, 362 (1878)).

According to the Violation Notice issued to the Appellant, she was charged with "Remov[al] Private Property." Additionally, at trial, the Assistant United States Attorney informed the court that "Ms. Tait is charged with removing private property." Tr. 3. Further, the Government's witness, Ranger Richardson, stated that he received a call regarding the possible theft of private property. Tr. 37. Based on the foregoing facts, the Government only provided Tait with reasonable notice that she faced charges of removal of private property. Since Tait was not put on notice to prepare a defense to alternative allegations, allowing the Government to convict her for removal of "public" property would offend her constitutional protections. To convict Tait based on the Violation Notice in this case, the Government must introduce sufficient evidence to prove that

the property in question was privately owned at the time she removed it.

## B. Sufficiency of the Evidence

In assessing an appeal on the ground of sufficiency of the evidence, this Court "must uphold a guilty verdict if, taking the view most favorable to the Government," Elliot 332 F.3d at 760-61, there is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Armel, 585 F.3d at 184. In Tait's brief, she contends that

> ...the government offered no evidence to establish that the rope and life ring were indeed private property. Moreover, even if any of the trial testimony could somehow be construed as circumstantial evidence that the rope and life ring were privately owned, that would still be insufficient evidence to prove beyond a reasonable doubt that they were privately owned given the overwhelming weight of evidence showing they were abandoned.

Appellant's Br. 8.

At trial, the Magistrate Judge disagreed with this assertion. He seemed to recognize the abandonment issue and rule in the alternative. He considered the possibility that the property was abandoned, and ultimately rejected it in favor of the conclusion that the property was still privately owned. In reaching that conclusion, the court "t[ook] the nature of the property into account." Tr. 82. It noted that the rope and life ring were taken from a "valuable fishing boat

20

that ran aground on Assateague Island sometime in the month preceding September of last year." Id. According to the Magistrate Judge, the value of the boat made it likely that it had not been abandoned.

The court continued down this analytical road, stating that "if this had been a cheap, plastic dory that a kid left on the beach, I think we'd have a different situation, you might be able to presume that that [sic] is abandoned and that somebody else could pick it up just like they could pick up refuse." Id. But as to the property in question, the court had "little difficulty in concluding that this was private property." Id. This conclusion was also bolstered, in the trial court's view, by the fact that Tait never told Richardson the property was abandoned when he seized it from her.[9] Tr. 83.

In order to evaluate whether the Government produced sufficient evidence on the private property element, the Court will first consider whether the property, based on the evidence in the record, could have ever been classified as private. If so, the Court will then address whether there was sufficient evidence for any reasonable factfinder to conclude beyond a reasonable doubt that the property was still private at the time it was removed by Tait.

---

[9] As previously noted, it is unclear how the absence of a response supports the finding of "private" property, though it could possibly infer consciousness of guilt.

## 1. Classification of the Property in Question

### a. Private Property

Black's Law Dictionary defines "private property" as "[p]roperty - protected from public appropriation - over which the owner has exclusive and absolute rights." Black's Law Dictionary 1233 (7th ed. 1999). At trial, the Government elicited statements from its witnesses that the boat in question was a "large fishing boat" or a "giant fishing boat," Tr. 20, 21, named "Freda Marie," Tr. 39, with an anchor rope that was between three and five inches wide and thirty feet long. Tr. 23, 39. Further, though he stated he did not know who owned the boat, Richardson testified that he informed Tait that the items she removed from the beach were private property, implying some knowledge on his part beyond the facts presented at trial. Tr. 47. Even though the Government never offered evidence of the actual owner of the boat, this Court finds that the boat's sheer size and presumed value, coupled with the fact that it was named, is sufficient circumstantial evidence for a reasonable factfinder to conclude beyond a reasonable doubt that at some point in the past some unnamed individual exercised exclusive and absolute rights over the boat and its accompanying equipment.[10] As a result, the Government offered

---

[10] While Tait testified that the rope was not visibly attached to the vessel, other witnesses described it as an anchor rope. Therefore, the Magistrate Judge could reasonably conclude that such evidence was more credible than Tait's testimony. As for the life ring, it had the

sufficient evidence at trial for a reasonable factfinder to conclude

beyond a reasonable doubt that the items in question were once private

property.

However, merely because the life ring and rope were once private

property does not mean that there was necessarily sufficient evidence

to conclude that the property was still private at the time Tait removed

such items.  As Tait's counsel argues in her brief, the property could

potentially be classified as abandoned.[11]

### b. Definition of Abandonment

The Court has examined several sources of law defining the term

abandonment, and has found that the definitions, regardless of their

source, are generally similar.  For example, according to Black's Law

Dictionary, abandoned property is "[p]roperty that the owner

voluntarily surrenders, relinquishes, or disclaims."  Black's Law

Dictionary 1233 (7th ed. 1999).  Since this alleged unlawful removal

took place on federal land in Virginia, the Court has also looked to

the courts of the Commonwealth of Virginia for input.  According to

the Supreme Court of Virginia, "[a]bandonment of tangible personal

property means that the owner thereof voluntarily relinquishes

possession thereof with the intention of terminating his ownership and

---

name of the vessel on it, and the Magistrate Judge could reasonably
conclude it belonged with the vessel.

[11] For a thorough discussion on the classification of property and its
applicability to property crimes, see 50 Am. Jur.2d § 58 (2006).

with no intention of vesting title in another.  Talley v. Drumheller, 143 Va. 439, 449 (Va. 1925).  Further, the "mere lapse of time and nonuser, unaccompanied by other evidence of intention, are generally not sufficient to constitute an abandonment." Id. at 449-50.

The Court has also looked for federal definitions of abandonment since Tait was prosecuted in federal court for the violation of a federal regulation.  The Fourth Circuit has discussed abandonment of property in the context of maritime law.  In Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co., the Fourth Circuit described the abandonment of property as the "'act of deserting property without hope of recovery or intention of returning to it.'" 974 F.2d 450, 461 (4th Cir. 1992) (quoting Nunley v. M/V Dauntless Colocotronis, 863 F.2d 1190, 1198 (5th Cir. 1989)).[12]

Moreover, in Benedict on Admiralty, abandonment is defined "within the meaning of the salvage law...[as]...the act of leaving or deserting such property by those who were in charge of it, without hope on their part of recovering it and without the intention of returning to it."  3A Martin J. Norris, Benedict on Admiralty § 134 (7th ed. 2010).  However, "[i]n admiralty cases, courts have traditionally applied a legal fiction to ships, under which an owner or the owner's

---

[12] The Court notes that in Columbus-America Discovery Grp., the Fourth Circuit was determining the status of a shipwreck "8,000 feet below the surface [of the ocean] and 160 miles off the South Carolina coast," unlike the beached vessel in the present case.  974 F.2d at 455.

successor retains title to a ship no matter how long it has been

abandoned."[13]  <u>Dluhos v. Floating and Abandoned Vessel</u>, 162 F.3d 63,

_____

[13]    This case raises an interesting question regarding the interplay
between common law, admiralty law, and criminal law.  While the Court
recognizes that Tait was not prosecuted for knowing removal (i.e.
common law larceny), it is well-settled law that abandoned property
cannot be the subject of larceny.  50 <u>Am. Jur.2d</u> 58.  Additionally,
the Court has held above that 50 C.F.R. § 27.61 does not prohibit the
removal of abandoned property.  Therefore, the Court is left with the
question of how to determine whether the property has been abandoned
in the present case.

    As mentioned above, at common law, abandonment was defined as
occurring when the true owner intentionally relinquished his or her
right to property, with no intention to return to it.  However, despite
the common law definition of abandonment, under admiralty law, there
is generally a strong presumption against abandonment, even if the
owner appears to have taken actions that would constitute abandonment
at common law.  According to <u>Benedict on Admiralty</u>, "[w]hen articles
are lost at sea the title of the owner in them remains, even if they
are found floating on the surface or after being cast upon the
shore....Should a vessel be abandoned without hope of recovery or
return, the right of property still remains in her owner."  <u>Benedict
on Admiralty</u>, <u>supra</u>, § 150.

    This "assumption of non-abandonment," <u>Columbus-America Discovery
Grp.</u>, 974 F.2d at 461, reflects the societal understanding that one
forced to leave his vessel due to forces of nature beyond his control
should not be divested of his ownership interest.  However, if title
is not divested, there would generally be little lawful incentive for
third parties to recover the vessel.  Salvage law solves that problem
by creating a lien on the vessel in favor of the salvor, to ensure that
the salvor is paid for his services.  <u>Benedict on Admiralty</u>, <u>supra</u>,
§ 150.  This salvage concept has been adopted to serve several
purposes.  It serves the interest in preserving the rights of owners
in their vessels, while also creating incentives to salvage vessels
and return them to commerce.

    While in the context of maritime law, the assumption of
non-abandonment serves well delineated purposes, it is not altogether
clear that such an assumption should be used in determining abandonment
for criminal law purposes.  The interests served through the
application of criminal law are different than those of maritime law.
In maritime law, the assumption of non-abandonment serves to balance
the interests of owners with those of potential salvors and create

74 (2d Cir. 1998). In the maritime law context, when a vessel is left near the coast, it is even more difficult to show abandonment because the vessel can be recovered easier and with less damage than if the vessel was still at sea. See Norris, supra, § 135. See also Abandoned Shipwreck Act of 1987, 43 U.S.C. § 2101 (defining abandoned shipwrecks as shipwrecks "which have been deserted and to which the owner has relinquished ownership rights with no retention.").

Lastly, this Court has looked at regulations *in pari materia*[14] to the regulation under which Tait was convicted. Title 50 of the Code

---

appropriate incentives to salvage. The criminal law is not concerned with such commercial incentives. In the strict criminal liability context, it is concerned with deterring the criminalized behavior after "fair notice." Apollo Energies, Inc., 611 F.3d at 685-88. It is not clear that using the assumption of non-abandonment would provide "fair notice of what conduct is criminal" because the assumption of non-abandonment is not necessarily known by the general public. Id.

As an example, in United States v. Edwards, 644 F.2d 1, 2 (5th Cir. 1981), the Fifth Circuit held that an individual could not object to the warrantless search of a boat that he had abandoned off the coast because that individual no longer had an expectation of privacy in the ship. Although the concept of abandonment under the Fourth Amendment is different than abandonment in property law, had the court applied the presumption of non-abandonment, the defendant would have had a stronger argument that he still maintained an expectation of privacy in the ship. However, such a presumption would have served no clear purpose in the criminal law context. Similarly, here, the Court sees no interest served by extending the assumption of non-abandonment to a statute that criminalizes the removal of private property from the Refuge. In that context, such an assumption would effectively create a presumption that the Government has proved an element of the offense, namely that the property is private, before ever setting a foot through the courtroom doors.

[14] Latin for "[o]n the same subject matter; relating to the same matter." Black's Law Dictionary 807 (8th ed. 2004).

of Federal Regulations, Section 28.41, a regulation also dealing with the governing of the National Wildlife Refuge System, is titled "Impoundment of abandoned property." This regulation does not define the term "abandoned," however, it does note that abandoned property is subject to removal by government officials if left unattended for 72 hours. Additionally, such property may be sold or disposed of if not claimed by the owner within three months, yet that owner may apply within three years for reimbursement for such property. See 50 C.F.R. § 28.41. While these three month and three year time frames are not dispositive on the subject of when an article of privately owned property becomes abandoned, they are informative.

All of the definitions discussed above have several common threads. Whether the source of the applicable law is state or federal, abandonment requires an intentional relinquishment of rights in private property with no intention to return to that property at a later time. Further, the amount of time that has passed between the relinquishment and the subsequent discovery of the property by a third party is informative on the topic of abandonment, but not dispositive. Abandonment is generally a question of fact. See Wiggins v. 1100 Tons of Italian Marble, 186 F. Supp. 452, 456 (E.D. Va. 1960). With that definition in mind, the Court must determine whether a reasonable finder of fact could accept the Government's evidence as adequate and sufficient to support a finding beyond a reasonable doubt that the rope

and life ring were private property, and not abandoned, at the time they were taken. See Elliott, 332 F.3d at 760-61.

### c. Application

Throughout the trial, both parties presented evidence that could lead a reasonable factfinder to conclude that the vessel and its equipment had been abandoned. During the Government's direct examination of Jennifer Kyle, she stated that the boat had been "there a long time," because she had seen it "a couple weeks before." Tr. 35. In that same direct examination, the Government asked her if there ever was a time when she observed "an abandoned boat" at Chincoteague, Tr. 30, to which she responded "Yes." In its subsequent question to her, the Government again referred to the boat as abandoned. Id. Later in the proceedings, Richardson said that the boat "ran aground" and he would "hazard a guess [that it had been there] about a month." Tr. 40. He also stated that he did not know the name of the owner, Id., and no governmental filings were submitted showing any official registration of the vessel or its ownership.

Additionally, during the cross examination of Ranger Richardson, he acknowledged that there were no signs posted in the vicinity of the boat indicating that people were to stay away from it, that it was private property, or that it was salvage material. Tr. 44-45. Richardson also testified that the crew did not take any steps to secure the boat. Tr. 48-49. Similarly, the Government's first witness,

Timothy Farrell, testified that the crew was nowhere around, Tr. 28, and there "were a lot of kids messing around [on the boat]." Tr. 21.

There was also circumstantial evidence to support the conclusion that the boat was still private property and had not been abandoned. In other words, evidence that the true owners still had an intention of returning to the vessel. However, this evidence is more sparse. The only evidence on the record to support that notion was the fact that the boat was large and <u>presumably</u> valuable, though no direct evidence was presented regarding such facts. According to the Magistrate Judge, a person owning such valuable property is not likely to abandon it. Further, as to time frame, the Magistrate Judge did not find the fact that only one month had passed between the time the vessel ran aground and the time Tait removed the items as sufficient to rebut the inference that a person would not abandon such valuable property. Furthermore, it must be remembered that Tait testified the life ring was in the water, not on the beach, and that the rope was not visibly attached to the boat; making the analytical connection even more attenuated. Tr. 62.

While all reasonable inferences must be drawn in the Government's favor, <u>Harvey</u>, 532 F.3d at 333, this Court concludes, given the scant evidence showing that the items in question were private property, that no "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" without excluding abandonment.

29

Garcia-Ochoa, 607 F.3d at 376. Although it is possible that one might conclude by a preponderance of the evidence that the vessel was not abandoned, Tait has certainly raised sufficient arguments such that a reasonable factfinder could not reach that conclusion beyond a reasonable doubt. The evidence at trial showed that the boat had been beached in the Refuge for at least several weeks. Witnesses testified that the crew was nowhere in sight of the boat, no signs or ropes were posted to stay away from the boat, and Richardson did not testify as to any information he received regarding the ownership of the boat, or that they had even investigated potential ownership of the vessel. Additionally, the owner had approximately one month to take action to reclaim the boat, but the Government presented no evidence of such action or of any intent to take such action. Moreover, on several occasions, the Government itself referred to the boat as abandoned during cross examination. Such circumstantial evidence of abandonment, especially in light of the minimal evidence of continued private ownership presented by the Government, raises a reasonable doubt as to the status of the vessel. It is true that a "large" vessel was likely valuable and an owner would not lightly abandon such a valuable piece of property. However, that evidence cuts both ways. The Government has not presented any evidence to show that any individual has displayed an intention to return to the vessel. See, e.g., United States v. Walker, No. 05-cr-40050, 2006 U.S. Dist. LEXIS

30

45542, *8 (S.D. Ill. June 22, 2006) (upholding a finding of abandonment of a boat under 50 C.F.R. § 27.93 when it was left in a slip that it had no right to be in for an extended period of time). The presumed value of the boat, coupled with the lack of evidence of any action on the part of the owner to protect such a vessel, raises a reasonable question about the owner's remaining interest in the boat.

### IV. CONCLUSION

The Court holds, for the foregoing reasons, that there was insufficient evidence that the removed items were private property at the time Tait removed such items, as required by 50 C.F.R. § 27.61. Accordingly, Tait's conviction is **REVERSED** and **REMANDED** for entry of **JUDGMENT OF ACQUITTAL**. See United States v. Ellyson, 326 F.3d 522, 532 (4th Cir. 2003).

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

January ⧄⧄ , 2011

A TRUE COPY, TESTE:
CLERK, U.S. DISTRICT COURT

BY _____
DEPUTY CLERK

31